hYELVERTON, J.
Western American Specialized Transportation Services, Inc., of Lafayette, Louisiana, appeals a judgment which found it liable as a garnishee to Packard Management, Inc. for $5,421.90. We affirm.
| PF ACTS
Packard obtained a judgment in California against Real Key Management Transportation Services, Inc. Packard had the California judgment made executory in the City Court of Lafayette. As of November 7, 1997, Real Key was hable on the judgment for $5,421.90 which included a 6% marshal’s fee as provided by La.R.S. 88:1704. Packard filed a petition for garnishment against Western American in Lafayette.
Western American and Real Key had in effect a terminal commission agreement. Pursuant to the agreement Real Key operated a terminal in California, and Western American paid Real Key for hauling and securing freight. Western American received a percentage of the revenue which was generated out of that terminal. Fifteen percent of the revenues were kept by Western American for administrative expenses. Any fuel advances or loans for repairs or for operational purposes were taken out of the remaining 85%. If Real Key did not owe any money, it would get as much as 40% of the revenues.
On November 18, 1997, Western American was served with the garnishment interrogatories. Western American admitted that it owed truck hauling revenues to Real Key but answered that Real Key still owed it approximately $140,000 denying that it had enough money to satisfy Packard’s claim against Real Key for $5,421.90 plus cost.
After a hearing, the trial court granted judgment in favor of Packard and against Western American as garnishee for $5,421.90 plus costs. Western American appeals.
^DISCUSSION
Western American claims that the doctrine of compensation is applicable and that the judgment holding it liable to Packard should be reversed. Western American claims that it is entitled to offset $140,-000 that Real Key owed it at the time of the service of the garnishment interrogatories. This amount consisted of a loan in the amount of $62,500 and cash and fuel advances made to Real Key.
Compensation takes place by operation of law when two persons owe to each other sums of money and these sums are liquidated and presently due. La.Civ.Code art. 1893. In such a case, compensation extinguishes both obligations to the extent of the lesser amount. Id.
An assertion of compensation in an answer to garnishment interrogatories equates to the affirmative defense of extin-guishment of the obligation. La.Code Civ.P. art. 1005; Arkla, Inc. v. Maddox & May Bros., 624 So.2d 34 (La.App. 2 Cir. 1993). “[T]he litigant pleading such an affirmative defense bears the burden of proving it by a preponderance of the evidence.” Id. at 37.
Western American reads the trial court’s oral reasons as finding that, although compensation applies in this case, Western American did not use the doctrine of compensation. Western American argues that compensation is applicable by operation of law.
*852 The trial court found that the doctrine of compensation was applicable. As we read the trial court’s reasons, the trial court found that compensation did not apply to the fuel and cash advances that Western American paid to other people on behalf of Real Key. The trial court reasoned that the people that Western American |4owed money to did not have a judgment that primed the judgment of Real Key. The trial court looked at it as a debt owed to the people who Western American paid and not a debt owed to Western American. However, for reasons we discuss further in this opinion, we do not find that we even need to reach the merits of this reasoning.
Western American contends that La. R.S. 13:3925, regarding the indebtedness of an employee to an employer, should apply in this case even though Real Key is not in the technical sense an employee of Western American. Western American argues that La.R.S. 13:3925 evidences the intent of the law to allow compensation to apply in the case of garnishment.
We do not dispute that compensation is available as a defense to a garnishee. Wild v. Horst, 250 So.2d 179 (La.App. 1 Cir.1971); Arkla, Inc. v. Maddox & May Bros. Casing, 28,081 (La.App. 2 Cir. 4/3/96); 671 So.2d 1220; and Gambino v. Culp, 444 So.2d 730 (La.App. 5 Cir.), writ denied, 448 So.2d 111 (La.1984), appeal after remand, 485 So.2d 512 (La.App. 5 Cir.), writ denied, 489 So.2d 920 (La.1986). We also agree that La.R.S. 13:3925 would apply in a case such as this one where the garnishee claims that the judgment debtor owes it money. Although Western American and Real Key had a contractual relationship, Western American was obligated to pay Real Key truck hauling revenues on a commission basis. Even though Western American and Real Key did not have the typical employee/employer relationship, La.R.S. 13:3925 contemplates commission basis arrangements also. We find that the spirit of La.R.S. 13:3925 would be applicable in a case such as this one.
Louisiana Revised Statute 13:3925(A) (emphasis supplied) provides:
A. If the employer answering such interrogatories should plead that the employee is indebted to the employer |sfor other amounts due and owing, other than those specified in R.S. 13:3881, the employer shall make a full and complete disclosure of the status of such account to the creditor, in writing by certified mail, showing the time that the debt was incurred, the exact amount of the debt, the credits applied to the debt, the manner in which the debt is being liquidated as of the time of the service of the interrogatories, and all other pertinent facts. Thereafter, the seizing creditor shall have fifteen days to file an opposition to the court’s consideration of the employee-employer debt as liquidated. Failure to file an opposition shall be considered a waiver of the seizing creditor’s rights to oppose the court’s consideration of the employer-employee debt as liquidated. If an opposition is filed with the court within the appropriate legal delays, the court may hear evidence affecting the issue of liquidation and shall render a judgment to determine whether the employee-employer debt should be considered liquidated, and thereby, allow payment to the employer of the non-exempt portion of the employee’s salary, wage or commission at a specified rate in the same manner as if the employer were a judgment creditor having a prior garnishment.
The stated intention of La.R.S. 13:3925 is that “the employer shall be presumed to be one holding a prior garnishment.” La. R.S. 13:3925(B). Western American also relies heavily on Arkla, 671 So.2d 1220, in which the court held that an obligation owed by the purchaser of oil, Scurlock, to remit production proceeds to the owner of a working interest in oil wells, Lisbon, and Lisbon’s obligation to Scurlock for delinquent severance taxes paid by Scurlock on its behalf satisfied the requirement for *853 compensation. The court held that Scur-lock therefore held no fund belonging to Lisbon at the time of Arkla’s garnishment.
Likewise, Western American claims that the debt owed by Real Key for the loan and fuel and cash advances and Western American’s obligation to Real Key for truck hauling revenues satisfied the requirement for compensation. However, the ^entitlement to the benefit of the doctrine of compensation must still be proven as evidenced by Subsection A of La.R.S. 13:8925. Even Scurlock had to prove the amount of severance taxes it paid on behalf of Lisbon. Western American has failed to prove the existence of a liquidated debt which is required by both Article 1893 and La.R.S. 13:3925 for the benefit of the doctrine of compensation to apply.
In its answer to the garnishment interrogatories, Western American stated that Real Key owed it approximately $140,000 which included a loan in the amount of $62,500 and the rest in cash and fuel advances. Attached to the answer was an invoice which specifically referred to an interrogatory requesting information on whether Western American made a payment on behalf of Real Key. Western answered one of the questions regarding payments and agreements with Real Key stating that Real Key was allowed to draw against a load not yet invoiced and referred to the invoice. The invoice specifically referred to amounts for fuel and cash advances, some of which were made after service of the interrogatories. We note that “[s]eizure in a garnishment procedure is effective the moment of service of the garnishment interrogatories.” Gambino, 444 So.2d at 732.
Michael Whitaker, executive vice president with Western American, testified about the $140,000 that Western American claimed Real Key owed it. He stated that $50,000 of the debt was secured by a conventional loan and security agreement. A promissory note in the amount of $50,000 was displayed to Packard’s attorney, but as observed by Packard’s attorney, the note was not executed by Real Key. This note was also never introduced into evidence.
17Whitaker then explained that the cash and fuel advances made to Real Key were for repairs and fuel to keep the operation going. In other words it was a loan for operating expenses. Other than Whitaker’s testimony, there was no evidence to substantiate these loans. Other than the cash and fuel advances disbursed after the garnishment interrogatories were served, there is no indication of the time the debt was incurred. Also the exact amount of the debt is not known since Western American states that “they presently owe us approximately $140,000.” Even at the hearing, Western American gave approximate amounts and not exact amounts. Western American also did not show the manner is which it was crediting the debt of Real Key. There was never any indication as to what amounts Real Key earned as its commission that would be applied to its debt. Western American offered no invoices, canceled checks, receipts, or business records to substantiate its claim that Western American had loaned or advanced money to Real Key.
Basically, Western American claimed it was owed money by Real Key but failed to confirm these claims. We also find it interesting that soon after the garnishment interrogatories were served on Western American, the agreement between Western American and Real Key was terminated. Subsequently, the principals of Real Key formed a new corporation. This corporation then entered into a terminal commission agreement with Western American.
We find that Western American failed to prove that it and Real Key owed each other sums of money which were presently liquidated and that this failure was fatal to its claim for compensation. Since Western American admitted that it owed truck hauling revenues to Real Key in an *854 amount sufficient to pay the judgment, Is we find that the trial judge was correct in granting Packard’s request for garnishment against Western American.
The judgment of the trial court is affirmed. Costs of this appeal are assessed to Western American Specialized Transportation Services, Inc.
AFFIRMED.